IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID SMITH,**

       **Plaintiff,**

v.                                      Civil Action No. 3:08cv88
                                              (Judge Bailey)

**DR. DAVID PROCTOR,**
**TERESA WAID,**
**JIM RUBENSTEIN,**
**CORRECTIONAL MEDICAL SERVICES,**

       **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

On May 14, 2008, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants pursuant to 42 U.S.C. § 1983. The plaintiff was granted permission to proceed as a pauper on June 18, 2008. The plaintiff paid his initial partial filing fee on November 7, 2008. Accordingly, this case is before the undersigned for an initial review and report and recommendation pursuant to 28 U.S.C.§§ 1915(e) and 1915A and LR PL P 83.01, et seq.

### II. The Complaint

In the complaint, the plaintiff asserts that on August 25, 2007, he fell on a wet floor at the Huttonsville Correctional Center. Complaint at 3. The plaintiff further asserts that the floor was just cleaned, but had not been marked as wet. Id. As a result of his fall, the plaintiff required surgery for his broken left hip. Id.

The plaintiff's surgery was performed at Stonewall Jackson Memorial Hospital by Dr. J. Snead, a surgical specialist. Id. Dr. Snead sent the plaintiff back to the institution with "post-surgical instructions for an aftercare program of recovery." Id. However, the plaintiff asserts that

the defendants, as well as their subordinates, failed to follow Dr. Snead's instructions. Id. The plaintiff asserts that he filed administrative remedies at all levels, including the Director of the West Virginia Division of Corrections ("WVDOC"), concerning the lack of appropriate care. Id. The plaintiff did not obtain satisfactory relief through the grievance process. Id.

The plaintiff also asserts that while incarcerated at the Huttonsville Correctional Center, he was under the medical care of Correctional Medical Services. Id. Moreover, the plaintiff asserts that because of the defendants negligence, he must now use a cane to maneuver and that he walks with a noticeable and painstaking limp. Id.

Next, the plaintiff asserts that on September 10, 2007, he had staples removed while at the Mt. Olive Correctional Center. Id. He was later transported back to the Huttonsville Correctional Center. Id. At the time of his transfer back, the plaintiff asserts that he again had a treatment program recommendation that the defendants failed to follow. Id.

As a result of the above allegations, the plaintiff requests that the Court order the defendants to give him proper medical treatment. Id.

### III. Standard of Review

Because the plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v.

Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). This includes claims in which the plaintiff has little or no chance of success. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

## IV. Analysis

In the complaint, it appears that the plaintiff is challenging the sufficiency of the medical care he has received for his broken left hip on two bases: 1) deliberate indifference to serious medical needs; and 2) medical negligence.

### A. Deliberate Indifference

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert.

---

[1] Id. at 327.

denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S. 825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." Id. at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

1. <u>Dr. David Proctor</u>

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." <u>Migdal v. Rowe Price-Fleming International, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).

Additionally, liability under 42 U.S.C. § 1983 is "personal, based upon each defendant's own constitutional violations." <u>Trulock v. Freeh</u>, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability under § 1983, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994); <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See <u>Zatler v. Wainwright</u>, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right under § 1983. <u>Rizzo v. Good</u>, 423 U.S. 362 (1976).

Although the plaintiff names Dr. Proctor as a defendant in this action, the plaintiff asserts no personal involvement on the part of Dr. Proctor in any alleged violation of his constitutional rights. The plaintiff does not assert that Dr. Proctor ever treated him or that Dr. Proctor was ever involved

in any of the plaintiff's medical care for his broken left hip. Because the plaintiff makes no specific allegations of a violation of any constitutional right against Dr. Proctor, the plaintiff has failed to state a claim against Dr. Proctor and he should be dismissed as a defendant in this action.

### 2. Teresa Waid and Jim Rubenstein

As with Dr. Proctor, the plaintiff states no allegation that Teresa Waid ("Waid") or Jim Rubenstein ("Rubenstein") were personally involved in his medical treatment. Instead, it appears that the plaintiff names Waid and Rubenstein only in their official capacities as the Warden of the Huttonsville Correctional Center and the Director of the WVDOC, respectively. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978)).

In this case, the plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights. Accordingly, the plaintiff cannot maintain his claim against Waid of Rubenstein unless he can establish supervisory liability as to those defendants.

Because there is no *respondeat superior* liability under § 1983, supervisory liability lies only "where it is affirmatively shown that the official charges acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997). Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. Fisher v.

6

Washington Metropolitan Area Transit Authority, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under § 1983 if the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), cert. denied, 513 U.S. 813 (1994).[2]

Here, the plaintiff fails to make any allegations which reveal the presence of the required elements for supervisory liability. Thus, the plaintiff has failed to state claim against defendants Waid and Rubenstein in that capacity.

3. Correctional Medical Services

"Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit." Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C.1989); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000)(unpublished) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under §42 U.S.C. 1983"); Roach v. Burch, 825 F. Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). Like a jail,

---

[2] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

Correctional Medical Services is not a "person" for purposes of § 1983. Accordingly, Correctional Medical Services is not a proper party to this suit and should be dismissed.

**B.  Medical Negligence**

To succeed on a claim of medical negligence or medical malpractice in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6.  This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity

> with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.2004).[3]

With regard to the appropriate standard of care, the plaintiff has completely failed to sustain his burden of proof. The plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of a broken left hip.[4] Under the circumstances of this case, the plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant's breach of the duty of care. Moreover, to the extent the plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, the plaintiff's medical negligence and medical malpractice claims should be dismissed.

---

[3] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[4] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of a broken left hip and the plaintiff's medical records are insufficient to establish the standard of care.

## V. Recommendation

For the reasons set forth herein, the undersigned recommends the following:

(1) the plaintiffs' claims of deliberate indifference against Dr. Proctor and the plaintiff's medical negligence and medical malpractice claims be **DISMISSED without prejudice**; and

(2) the plaintiff's deliberate indifference claims against Teresa Waid, Jim Rubenstein and Correctional Medical Services be **DISMISSED with prejudice**.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket.

DATED: November 18, 2008.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE